UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,                      MEMORANDUM AND ORDER
                                                      04-CV-2314 (ILG)

   -against-

UNITED STATES CURRENCY IN THE
AMOUNT OF SIX HUNDRED THOUSAND
THREE HUNDRED AND FORTY ONE
DOLLARS AND NO CENTS ($600,341.00)
IN UNITED STATES CURRENCY, MORE
OR LESS, AND ALL FUNDS TRACEABLE
THERETO,

                Defendant.
------------------------------------------------x

GLASSER, United States District Judge:

       The United States commenced this civil *in rem* forfeiture action on June 4, 2004, seeking forfeiture of United States currency totaling $600,341.00 (the "defendant property") as property traceable to and/or involved in money laundering and narcotics violations, pursuant to 21 U.S.C. § 881 and 18 U.S.C. §§ 981 and 983. Claimant Rafael Erasmo Marmol filed an Answer and a Verified Claim in opposition to the government's complaint. The government has filed an unopposed motion to dismiss Mr. Marmol's claim for failure to comply with discovery orders and failure to prosecute his claim, pursuant to Fed. R. Civ. P. 37 ("Rule 37") and 41 ("Rule 41"). For the reasons stated below, the court grants the government's motion pursuant to Rule 37, denies the motion pursuant to Rule 41, and dismisses Mr. Marmol's claim.

# BACKGROUND[1]

## Relevant Factual History

The verified complaint *in rem* alleges that on or about January 6, 2004, in the vicinity of Northern Boulevard and 95th Street, in East Elmhurst, New York, during the course of conducting an ongoing money laundering and narcotics trafficking investigation, special agents of the El Dorado Task Force observed Marmol exit a black Volkswagen Beetle (the "Marmol vehicle") empty-handed, walk several blocks, and enter a white Ford Explorer. The agents observed that Marmol had a brief conversation with the driver inside the white Ford Explorer and the driver then drove to 95th Street and pulled alongside the Marmol vehicle, where Marmol exited the white Ford Explorer with two bulging shopping bags in his hands and placed the bags inside the Marmol vehicle. The agents then observed the Marmol vehicle driving in circles for a few blocks in an apparent attempt to elude anyone that may be following him and then drove towards 99th Street and 23rd Avenue.

The government's complaint alleges that later that night, Marmol committed a traffic infraction while driving the Marmol vehicle and was stopped by special agents of the El Dorado Task Force. The agents asked Marmol for permission to search the

---

[1] The ensuing statement of the facts underlying the government's claim, as well as all facts regarding the exchange of discovery documents, telephone calls between the parties, and any other matters for which a docket entry was not created are taken from the government's *in rem* complaint and/or its memorandum of law in support of this unopposed motion. In the absence of a submission in opposition by Mr. Marmol, the court must assume the accuracy and veracity of the government's account of these events. See I.B.E.W. Local No. 910 Welfare, Annuity, and Pension Funds ex rel. Love, 98 F. Supp. 2d 265, 270 (N.D.N.Y. 2000) ("Because the Court is presented with an unopposed motion for summary judgment, the Court assumes the facts derived from the Complaint to be true and for the purposes of the instant motion, "'adopts [P]laintiff[s]' recitation of the facts underlying this dispute.'") (quoting Onondaga County Laborers' Health, Welfare, Pension, Annuity and Training Funds v. Sal Masonry Contractors, Inc., No. 91-cv-466, 1992 WL 75051, at *10 n. 1 (N.D.N.Y. Apr. 7, 1992)).

Marmol vehicle and Marmol consented. As a result of the consent search of the Marmol vehicle, agents found two shopping bags inside the car, filled with bundles of small denominations of United States currency. Agents also conducted a pat-down search of Marmol, which revealed that he was carrying $1,500.00 in $100 bills in United States currency on his person. Law enforcement agents thereafter seized all the currency, totaling $179,970.00. During the consent search of the Marmol vehicle, agents found a credit card statement addressed to "Rafel Tejada, 98-05 23rd Avenue, East Elmhurst, New York." When questioned about the currency, Marmol told the agents that he was visiting New York, lived in the Dominican Republic, and that the money was not his but belonged to his friend "Juan", whose last name Marmol claimed not to know.

    Later that night, agents escorted Marmol, on consent, to the address listed on the credit card statement. Marmol used a set of keys to open the basement apartment door. Upon entry, a person who identified himself as Rafael Tejada,[2] the tenant of the basement apartment, emerged. Tejada stated that Marmol had been staying with him for the past two weeks. Tejada then consented, in writing, to the search of the basement apartment (the "Tejada residence"). While searching the Tejada residence, the agents found a suitcase in the bathtub. At the request of the agents, Tejada opened the suitcase, wherein the agents found multiple, thick bundles of $20 bills and other small denominations of United States currency, which were covered with garlic powder, and individually wrapped in clear plastic tape. In another room, the agents also found a

---

[2] The government's motion identifies the name on the credit card statement in the Marmol vehicle as "Rafel Tejada," and the individual who the El Dorado Task Force agents encountered at the Tejada residence as "Rafael Tejada." The court assumes that the credit card statement referred to the person at the Tejada residence, but is left uncertain as to the correct spelling of Mr. Tejada's first name.

shopping bag that contained multiple thick bundles of United States currency. Additionally, in a different room of the Tejada residence, the agents found notebooks and miscellaneous documents which the agents, based on their training and experience, believed to be related to narcotics activities and illegal gambling operations.

The total amount of cash seized from the Tejada residence totaled $420,371.00 in United States currency. Following the discovery of the cash at the Tejada residence, Tejada stated that the money did not belong to him, that he had never seen it or the suitcase before, and believed that Marmol brought it into the Tejada residence when he was not home since Marmol had his own set of keys to the Tejada residence. Samples of the currency seized from the Marmol vehicle and the Tejada residence were subjected to ion scanning and tested positive for a high presence of cocaine.

**Procedural History**

On June 4, 2004, the day that this action was commenced, the government served its first interrogatories on Marmol, to which Marmol responded in August 2004. From June 2004 through March 2005, the government's memorandum of law indicates that the parties were actively involved with discovery, including the exchange of interrogatories and the scheduling of depositions. On March 23, 2005, Magistrate Judge Pollak issued a Notice of Impending Dismissal For Failure to Prosecute, in which she observed that "[n]o action has been taken by any party in this case since July 29, 2004," and warned that "[a] Report and Recommendation will issue, recommending that the case be dismissed for lack of prosecution, if within thirty (30) days of the date of this Notice no further proceedings have been commenced by any party or if no explanation for the lack of proceedings has been filed and approved by the Court." In

response to Magistrate Pollak's order, the government filed a Status Report on April 4, 2005, in which it recounted the parties' ongoing discovery efforts and requested that the case not be dismissed for failure to prosecute. In response to the government's request, on April 21, 2005, Magistrate Pollak entered an order directing depositions in this case to be completed by May 13, 2005, and scheduling a status conference for May 25, 2005. During that conference, Magistrate Pollak instructed Marmol's attorney to provide the plaintiff outstanding document requests within thirty days and ordered Marmol to appear for settlement discussions.[3]

Approximately one month later, on June 28, 2005, another status conference was held, at which Magistrate Pollak granted the government's request for a stay of discovery pursuant to 18 U.S.C. § 981(g). This stay was extended several times at the government's request, until terminated by Magistrate Pollak on May 31, 2006. During the status conference at which the stay was lifted, Magistrate Pollak instructed Marmol's attorney to respond to the government's discovery requests by July 7, 2006, and that Marmol be deposed before the next status conference on September 14, 2006. The government's memorandum of law alleges that Marmol failed to comply with both orders.

On June 8, 2006, the government submitted a status report to the court, informing it that Mr. Marmol had been indicted in the Northern District of Georgia on

---

[3] The government's memorandum of law indicates that depositions were not completed pursuant to Magistrate Pollak's April 21, 2005, order, and that at some point after the May 25, 2005, hearing, Magistrate Pollak "instructed that depositions on both sides occur," presumably in the near future, and that "Marmol failed to comply with the Court's Order." Pl. Mem. at 6. The court sees no indication in the record that any such order was issued, and notes that Magistrate Pollak's subsequent grant of the government's request for a stay of discovery would have superseded that order.

March 15, 2006, on charges relating to drug trafficking and money laundering. It appears that Marmol became a fugitive from justice at some point in the summer of 2006; during a status conference on August 28, 2006, Magistrate Pollak granted a stay of discovery for thirty days in order for Marmol's attorney, Mr. Rosenblatt, to attempt to locate his client.[4] In a letter dated September 18, 2006, Mr. Rosenblatt informed the court that, after due diligence, he had been unable to contact his client.[5]

During a status conference on December 14, 2006, Marmol was given until January 12, 2007, to respond to the government's discovery requests. The government's memorandum of law states that Marmol's counsel informed Magistrate Pollak that he could not find his client and did not know where he was. Magistrate Pollak informed Marmol's counsel that if no discovery responses were received by the deadline, the government would be allowed to seek dismissal of Marmol's claim for failure to prosecute. Mr. Marmol failed to comply with Magistrate Pollak's order to supply responses to the government's requests by January 12, 2007, and the government filed this motion to dismiss Marmol's Answer and Verified Claim on February 15, 2007. Mr. Rosenblatt did not respond in opposition to this motion; the court is informed by the government that Mr. Marmol remains a fugitive and Mr. Rosenblatt is unaware of his

---

[4] The government objected to a stay of discovery on the grounds that, as a fugitive, Marmol should not be entitled to contest the forfeiture. In a letter to the court dated September 29, 2006, plaintiff moved to strike Marmol's claim, pursuant to 28 U.S.C. § 2466. Because it grants the plaintiff's motion under Rule 37, the court need not address this alternative ground for dismissing Marmol's claim.

[5] The court notes that Mr. Rosenblatt's letter was apparently not entered into the case docket, nor did the government attach a copy of the letter to its papers in support of this motion. One entry was made in the case docket on September 18, 2006, but that entry was a motion apparently filed by defense counsel on August 3, 2006, objecting to the government's Notice of Deposition and requesting that this case be stayed until the criminal action against Mr. Marmol in the Northern District of Georgia had been resolved. The August 3 motion gives no indication that Mr. Marmol was a fugitive at that time.

current location and is unable to contact him.

## DISCUSSION

**Dismissal for Failure to Comply with Discovery Orders Under Rule 37**

When a party[6] has failed to comply with a discovery order, Rule 37(b)(2)(c) permits the court, *inter alia*, to enter "[a]n order striking out pleadings or parts thereof... or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Dismissal for failure to comply with discovery orders is "a severe sanction that should not be lightly imposed," Friends of Animals Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997), but may be warranted where "the requisite element of willfulness or conscious disregard for the discovery process... justifies the sanction of dismissal." Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1458 (D.C. Cir. 1986) (citations omitted); see also Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir. 1990) (quoting Webster). The court is satisfied that Mr. Marmol's repeated failures to comply with Magistrate Pollak's discovery orders, despite the numerous extensions and stays granted to both parties, and especially his current status as a fugitive from justice, indicate an "element of willfulness or conscious disregard for the discovery process"

---

[6] Rule 37(b)(2) limits the availability of sanctions to "parties" and their agents; this is no bar to the dismissal of Marmol's claim, as courts have long held that *in rem* claimants are parties to the action. See Burns Bros. v. the Central R.R. of New Jersey, 202 F.2d 910, 913 (2d Cir. 1953) (Hand, J.) (finding identity of parties between an *in rem* action and a subsequent *in personam* action against *in rem* claimant); United States v. $160,066.98 from Bank of America, 202 F.R.D. 624, 626-627 (C.D. Cal. 2001) (concluding that claimants in civil forfeiture actions are "parties"). Moreover, courts in this Circuit have held that *in rem* claimants are subject to Rule 37 sanctions for discovery violations. See, e.g., United States v. 20 Cases, Etc., of Jell-O, 77 F. Supp. 231, 231 (S.D.N.Y. 1947) (denying government's motion to vacate *in rem* claimant's notice of deposition, while acknowledging that "[i]f upon the examination improper matters are inquired into, libellant has its remedy under Rule 37, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.").

7

such that dismissal of his Answer and Verified Claim is warranted under Rule 37. This portion of the government's motion is therefore granted.

**Dismissal for Failure to Prosecute Under Rule 41(b)**

The government also seeks dismissal of Marmol's claim for failure to prosecute pursuant to Rule 41(b), which provides that "[f]or failure of the *plaintiff* to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant" (emphasis added). In support of its Rule 41 motion, the government relies principally on Dosunmu v. United States, 361 F. Supp. 2d 93 (E.D.N.Y. 2005), in which Judge Trager granted the government's motion to dismiss a civil action seeking the return of administratively forfeited property for failure to prosecute. The court notes, however, that Dosunmu, unlike this case, was an *in personam* civil action in which the "claimant" occupied the role of civil plaintiff, so that the authority of the court to grant the requested relief under Rule 41(b) could not reasonably be doubted. By contrast, this case is an action *in rem* in which Marmol, as claimant to the defendant property, "stands in the shoes of a defendant in an *in personam* civil action." United States v. $242,484.00, 389 F.3d 1149, 1168 n.1 (11th Cir. 2004) (Tjoflat, J., concurring). Although the court has found virtually no legal or scholarly authority on this question,[7] the plain text of Rule 41(b) limits the application of that rule to "plaintiff[s]," which would appear to exclude *in rem* claimants who are

---

[7] The court has located only one case addressing this issue. See United States v. Two Million Seven Hundred Sixty-Seven Thousand Two Hundred and Two Dollars and Twenty-Seven Cents ($2,767,202,27) in U.S. Currency, No. 03-1289, 2005 WL 3479178, at *1 (noting the district court's previous dismissal of one claimant's Claim and Answer for failure to prosecute). However, the district court's opinion does not indicate whether the Claim and Answer were dismissed pursuant to Rule 41(b), the court's inherent authority, or some other Federal Rule of Civil Procedure.

neither plaintiffs nor defendants, but whose position is most analogous to an *in personam* defendant.  Moreover, the court notes that Rule 41(c) states that "[t]he provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim," but makes no mention of *in rem* claims, thus further suggesting that Rule 41(b) does not permit motions to dismiss *in rem* claims for failure to prosecute.

Although this court might reasonably exercise its "inherent authority," which the Supreme Court has held extends beyond a strict literal reading of Rule 41,[8] in order to dismiss Marmol's Verified Claim for failure to prosecute, in an abundance of caution, it declines to do so in this case, where the authority to grant the relief sought by the government is expressly available to the court pursuant to Rule 37.  The government's motion to dismiss the Verified Claim for failure to prosecute, pursuant to Rule 41, is therefore denied.

## CONCLUSION

For the reasons herein stated, the government's motion to dismiss this action for

---

[8] See Link v. Wabash R.R. Co., 370 U.S. 626, 630-632, 82 S. Ct. 1386, 1388-1389 (1962).  Upholding the district court's inherent authority to dismiss an action *sua sponte* for failure to prosecute, notwithstanding the language of Rule 41(b) which appears to permit such action only on motion of the defendant, the Court wrote, "Neither the permissive language of [Rule 41(b)]-which merely authorizes a motion by the defendant-nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.... It would require a much clearer expression of purpose than Rule 41(b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition." Id. (footnotes omitted).  The Court's reasoning in Link would lead this court to conclude, were it necessary to grant the government's requested relief, that the literal reading of Rule 41(b) which apparently excludes *in rem* claimants from the class of litigants whose claims can be dismissed by the court for failure to prosecute is not intended to limit the court's inherent authority to dismiss such claims in appropriate circumstances.

failure to comply with discovery orders pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) is hereby GRANTED.  The government's motion to dismiss for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) is hereby DENIED.

                                        SO ORDERED.

Dated:       Brooklyn, New York
                 March 5, 2007

                                    _____/s/_____

                                      I. Leo Glasser
                                      United States Senior District Judge

Copies of the foregoing were sent electronically on this day to:

**Counsel for Plaintiff**
Brendan G. King
Assistant United States Attorney for the Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201

**Counsel for Defendant**
Robert A. Rosenblatt
The Rosenblatt Law Firm
7695 Sw 104th Street
Second Floor
Pinecrest, FL 33156